# UNITED STATES DISTRICT COURT

for the

Eastern District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>1) Samsung cellular phone, color-back, IMEI:<br>352741117059843 (Target Device 1) & (2) Apple iPhone,<br>color-red, IMEI: 353972106770442, (Target Device 2) | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No.  21-mc-436 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Eastern _____ District of _____ Louisiana _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Knowingly or intentionally possess with intent to distribute a Controlled Substance; Conspiracy to possess with intent to distribute a Controlled Substance |
| 18 USC 922(g)(1) | Knowingly possessing a firearm that has an effect on interstate commerce while knowing one is a prohibited person |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Matthew Strickland
_____
*Applicant's signature*

Matthew Strickland FBI Special Agent
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  March 3, 2021

City and state:  New Orleans, Louisiana

*Judge's signature*

DANA M. DOUGLAS U.S. MAGISTRATE JUDGE
_____
*Printed name and title*

**ATTACHMENT A**

The property to be searched is a SAMSUNG CELLULAR TELEPHONE, BLACK IN COLOR, IMEI: 352741117059843 ("TARGET DEVICE 1") and an APPLE IPHONE, RED IN COLOR, IMEI: 353972106770442, ("TARGET DEVICE 2"). TARGET DEVICE 1 and TARGET DEVICE 2 are currently located at FBI New Orleans Evidence Control Facility, 2901 Leon C. Simon, New Orleans, LA**.**

This warrant authorizes the forensic examination of the TARGET DEVICES for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

The property or data to be searched for and seized from the Device described in Attachment A are any items which may constitute evidence of 922(g)(1), 18 U.S.C. § 924(c), or 21 U.S.C. 841, to specifically include, but not limited to:

a. lists of customers and related identifying information;

b. types amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

c. any information related to sources of drugs or firearms (including names, addresses, phone numbers, or any other identifying information);

d. all voicemail, audio recordings, video recordings, pictures, or other saved media pertaining to trafficking controlled substances or possession of firearms;

e. any written electronic communications to buyers or sellers of drugs or firearms;

f. all records of incoming and outgoing calls to buyers or sellers of drugs or firearms;

g. any information recording May's schedule or travel from 08/2020 to the present, including calendars, reminders, and alerts;

h. all applications utilizing GPS for mapping or storing geolocation data which would show May's presence at the Gallier Street house where the search was executed or any other location where he sold or purchased controlled substances or firearms;

i. all bank records, checks, credit card bills, account information, and other financial records including word processing files, and notes or applications which have any capability of acting as a ledger;

j.   evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

k.   records of Internet Protocol addresses used; and

l.   any and all metadata pertaining to the above listed items.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION FOR A SEARCH WARRANT OF: <br><br> (1) SAMSUNG CELLULAR TELEPHONE, BLACK IN COLOR, IMEI: 352741117059843 ("TARGET DEVICE 1"); <br><br> AND <br><br> (2) APPLE IPHONE, RED IN COLOR, IMEI: 353972106770442, ("TARGET DEVICE 2"); <br><br> CURRENTLY LOCATED AT FBI NEW ORLEANS EVIDENCE CONTROL FACILITY, 2901 LEON C. SIMON, NEW ORLEANS, LA | Case No. 21-mc-436 |

**AFFIDAVIT IN SUPPORT OF AN**
**APPLICATION FOR A SEARCH WARRANT**

I, Matthew Strickland, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.     I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since March 2020. I am currently assigned to the FBI New Orleans Violent Crime Task Force (NOVCTF) and my duties include the investigation of bank robberies, fugitives, kidnappings,

3.    threats to life and other violent crimes. I was previously employed by the City of Hattiesburg, Mississippi, as a law enforcement officer and in that capacity for approximately three years.

4.    This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.    The property to be searched is:

a.    A SAMSUNG CELLULAR TELEPHONE, BLACK IN COLOR, IMEI: 352741117059843 ("TARGET DEVICE 1"); and

b.    An APPLE IPHONE, RED IN COLOR, IMEI: 353972106770442 ("TARGET DEVICE 2").

6.    The Devices are currently located at FBI New Orleans Evidence Control Facility, 2901 Leon C. Simon, New Orleans, LA.

7.    The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE OF DRUG TRAFFICKING AND ILLEGAL FIREARMS USE

8.    In August of 2020, the FBI NOVCTF received information of illegal narcotics and firearm activity being conducted at 1218 Gallier Street, New Orleans, Louisiana 70117 ("target residence"). The information was processed through the FBI National Threat Operations Center. The FBI began surveilling the location in an attempt to observe any crimes being committed. During this time, FBI Task Force Officer ("TFO") Chad Cockerham, a New Orleans Police Department (NOPD) Detective embedded with the Task Force, learned from multiple residents of that area that the criminal activity of the occupants of the target residence is a nuisance to the

community. Further, investigators learned of a shooting incident that occurred at the intersection of Marias Street and Gallier Street, a few houses down from the target residence, on December 23, 2020 at 6:21 p.m.

9.      The FBI elected to canvass the area of the shooting incident in an attempt to locate video that would assist the NOPD in the state investigation. Video was found depicting a subject known to FBI agents as Christopher **MAY** (B/M, 01/12/1992) loitering on the porch of the target residence approximately one hour before the shooting, holding a rifle consistent to the style of a "Draco." Agents continued to view the surveillance video and observed five other males on the porch with **MAY** as he possessed the firearm. While this is ongoing, two young children are loitering on the porch among the group of male subjects. **MAY** was observed to have free range of access to the target residence and would come and go at will. The location is currently being rented by the sister of **MAY**.



(May pictured in green hat holding a "Draco")

10.     The FBI Task Force is familiar with **MAY** due to his ongoing criminal activity within the 5th Precinct of New Orleans. **MAY** was convicted for felony possession of cocaine on January 23, 2012, in violation of Louisiana Revised Statute Title 40, Section 967(c)(2) in Orleans Parish Criminal District Court, Case Number 506805, Section "H." **MAY** pleaded guilty to a second felony on August 7, 2014, for being a felon in possession of a firearm in the Orleans Parish Criminal District Court, Case Number 512896, Section "K."

11.     Because of his felony convictions, **MAY** is prohibited from possessing a firearm. TFO Cockerham, prepared an arrest warrant for **MAY** in the ongoing-state investigation for a violation of Louisiana Revised Statue 14:95.1, possession of a firearm by a person convicted of certain felonies. TFO Cockerham submitted the arrest warrant to an Orleans Parish Magistrate Commissioner who approved the warrant for the arrest of **MAY**. TFO Cockerham also applied for a search warrant for the target residence to locate **MAY**, all firearms, ammunition, and firearms paperwork. The search warrant was issued by an Orleans Parish Commissioner granting the search of the location.

12.     On Friday, January 29, 2021, at approximately 8:30 a.m., FBI agents surrounded the target residence in an attempt to arrest **MAY** and conduct the search. Agents recovered a .40 caliber Glock semi-autmoatic firearm with an extended magazine.  Continued search of the house revealed 23.4 grams of powder cocaine, a digital scale, and plastic baggies found in a cut-out area of the wall. These items are consistent with distribution of cocaine.



(Photograph of cocaine seized from target residence)

13.     **MAY** has described on recorded jail phone calls that during the search of the home, approximately $5,000 cash was not found by investigators. He instructed family members to retrieve it from a hiding spot in the kitchen. This amount of U.S. currency co-located in an area with a large amount of cocaine, baggies, and a scale is consistent with distribution of narcotics. Further, a search pursuant to a federal warrant of **MAY**'s car revealed 37.1 grams of heroin mixed with fentanyl packaged into many small plastic baggies, a bag of Percocet, and bag of Oxycodone in addition to ammunition for four different caliber firearms. The packaging of drugs in many small baggies is consistent with distribution of heroin/fentanyl.

### PROBABLE CAUSE OF CELLULAR PHONE USAGE

14.     In addition to my own experience and training, I have consulted with expert investigators within the FBI specific to the field of forensic cellular phone analysis.

15.     It is known to investigators that narcotics traffickers use multiple phones (a/k/a "burner phones") in order to hide communications with drug suppliers and buyers from law

5

enforcement. They will call, text, and use other forms of electronic communication to make arrangements for transactions of illicit substances. Because they often use different numbers and phones to contact the same people, an extraction of all phones together is necessary to get a complete picture of the communications made. Their contact information and phone numbers are often saved through a phone book application, call logs, emails, voicemails or other electronic messages. These electronic messages can be sent through their cellular provider or a third party application.

16.     In addition to communicating via voice and electronic messaging, narcotics traffickers frequently take pictures and videos of controlled substances and cash which are the proceeds of sales of drugs. These images and videos can be used to show buyers the product they have, but many times are just used to brag to other people how much product and money they have access to and gain "clout" within their market space. They store these images on the device, post them to social media accounts, and send them to contacts. **MAY** has posted pictures on his public Instagram profile which are typically uploaded via cellular phone.

17.     Mass quantities of heroin and cocaine are typically not produced in the United States and arrive through international travel. In order to arrive in Louisiana, they have to travel in interstate or international commerce. Much of the New Orleans area drug-trafficking supply arrives through Texas. Investigators know **MAY** travelled to Houston, Texas in January 2021. Since the phones used by **MAY** have GPS capabilities, using geolocation data would indicate what areas he travelled to when buying bulk narcotics from his supplier and the amount of time he spent at the residence on Gallier Street where he kept fruits and evidence of drug trafficking. The investigation has revealed that **MAY** spent considerable time at the Gallier-Street home and he was observed conducting suspected drug deals from that location.

18.    **MAY** had no employment during the time of this investigation. Any banking or accounting information contained would reveal the extent of his profits from drug trafficking activity. Narcotics traffickers are known to keep logs and ledgers of drug and cash amounts. No paperwork was found within the home and it is likely that this information is stored on a digital medium.



(**MAY** pictured on a public Instagram page with buttstock of assault rifle sticking off the foot of the bed in lower left portion of photograph.)

7



(May pictured in January 2021 counting money. Pictures from an associate of May's Instagram account from the same time frame are geotagged as being taken in the Houston, Texas area.)



(May pictured with red Apple iPhone with black case. A large amount of cash can be seen

bulging from his left pocket.)



(TARGET DEVICE 2, a red Apple iPhone with black case)

19.    **MAY** also had a conversation via recorded jail-phone calls stating that during the

search of the home investigators took his cellular phones in the plural. **MAY** was in possession of

a red Apple iPhone (TARGET DEVICE 2) during his arrest and it appeared he was attempting to

use it during his apprehension. Two additional cellular telephones were found powered on during

the search for a total of three cellular phones functioning in the residence at the time of the search.

The Samsung phone (TARGET DEVICE 1) was found in the area of the residence which **MAY**

had open access to. A watch which **MAY** appears to be wearing in the pictures appearing within

this affidavit was found next to it. Most notably, the box for the phone (with matching serial

numbers) was found during the execution of a search warrant of **MAY**'s car.

10



(TARGET DEVICE 1 sitting next to watch which appears to be worn by May in Instagram

photographs depicted above.)



(Factory box for TARGET DEVICE 1 found in **MAY**'s car)

20.     The TARGET DEVICES are currently in the lawful possession of the FBI New Orleans.  They came into the FBI New Orleans's possession from a search of 1218 Gallier St., pursuant to a warrant issued by the Orleans Parish Criminal District Court, signed by Judge Juana Lombard. Therefore, while the FBI New Orleans might already have all necessary authority to examine the TARGET DEVICES, I seek this additional warrant out of an abundance of caution to be certain that an examination of the TARGET DEVICES will comply with the Fourth Amendment and other applicable laws.

21.     The TARGET DEVICES are currently in storage at FBI New Orleans Evidence Control Facility.  In my training and experience, I know that they have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the TARGET DEVICES first came into the possession of the FBI New Orleans.

## TECHNICAL TERMS

22.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.     Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing

back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.      IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

23.      Based on my training, experience, and research, I know that the TARGET DEVICES have capabilities that allow them to serve as a wireless telephone**,** digital camera, portable media player, GPS navigation devices, and PDA**.** In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24.      Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

25.      *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence

of the crimes described on the warrant, but also forensic evidence that establishes how the TARGET DEVICES were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the TARGET DEVICES because:

a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

14

26.     *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the TARGET DEVICES consistent with the warrant.   The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

27.     *Manner of execution.*   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

28.     Due to **MAY**'s possession of multiple cellular phones at the time of his arrest, the conversation indicating that investigators seized cellular telephones belonging to him in the residence, the fact that illegal narcotics and firearms related activities are often discussed using cellular telephones, including "burner phones", and the knowledge that **MAY** was engaged in actual illegal narcotics and firearms activity within the home, I respectfully request a search warrant for (1) the SAMSUNG CELLULAR TELEPHONE, BLACK IN COLOR, IMEI: 352741117059843 and (2) the APPLE IPHONE, RED IN COLOR, IMEI: 353972106770442 seized during the search of the residence to further identify any items of evidentiary value related to violations of 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(c), and 21 U.S.C. 841.

29.     I respectfully submit that this affidavit supports probable cause for a search warrant

of the TARGET DEVICES described in Attachment A to seize the items described in Attachment

B to find fruits and evidence of violations of 21 U.S.C. § 814 and 18 U.S.C. § 922 and § 924.

Respectfully submitted,

/s/ Matthew Strickland

Matthew Strickland
Special Agent
Federal Bureau of Investigation
Badge No. 29237

## ELECTRONIC CERTIFIFCATION

Pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3), the undersigned judicial officer has on this date considered the information communicated by reliable electronic means in considering whether a complaint, warrant, or summons will issue. In doing so, I have placed the affiant under oath, and the affiant has confirmed that the signatures on the complaint, warrant, or summons and affidavit are those of the affiant, that the document received by me is a correct and complete copy of the document submitted by the affiant, and that the information contained in the complaint, warrant, or summons and affidavit is true and correct to the best of the affiant's knowledge.

Subscribed and sworn to before me
on this ___3rd___ day of March 2021.

DANA M. DOUGLAS
UNITED STATES MAGISTRATE JUDGE

## <u>ATTACHMENT A</u>

The property to be searched is a SAMSUNG CELLULAR TELEPHONE, BLACK IN COLOR, IMEI: 352741117059843 ("TARGET DEVICE 1") and an APPLE IPHONE, RED IN COLOR, IMEI: 353972106770442, ("TARGET DEVICE 2"). TARGET DEVICE 1 and TARGET DEVICE 2 are currently located at FBI New Orleans Evidence Control Facility, 2901 Leon C. Simon, New Orleans, LA**.**

This warrant authorizes the forensic examination of the TARGET DEVICES for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

The property or data to be searched for and seized from the Device described in Attachment A are any items which may constitute evidence of 922(g)(1), 18 U.S.C. § 924(c), or 21 U.S.C. 841, to specifically include, but not limited to:

a. lists of customers and related identifying information;

b. types amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

c. any information related to sources of drugs or firearms (including names, addresses, phone numbers, or any other identifying information);

d. all voicemail, audio recordings, video recordings, pictures, or other saved media pertaining to trafficking controlled substances or possession of firearms;

e. any written electronic communications to buyers or sellers of drugs or firearms;

f. all records of incoming and outgoing calls to buyers or sellers of drugs or firearms;

g. any information recording May's schedule or travel from 08/2020 to the present, including calendars, reminders, and alerts;

h. all applications utilizing GPS for mapping or storing geolocation data which would show May's presence at the Gallier Street house where the search was executed or any other location where he sold or purchased controlled substances or firearms;

i. all bank records, checks, credit card bills, account information, and other financial records including word processing files, and notes or applications which have any capability of acting as a ledger;

j.  evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

k.  records of Internet Protocol addresses used; and

l.  any and all metadata pertaining to the above listed items.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.